UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| THE ESTATE OF JESSIE BOOTH, by and through STACY BOWEN, personal representative; J.B. a minor individual by and through his next friend and guardian, Stacy Bowen; STACY BOWEN, an individual, <br><br> Plaintiffs, <br><br> v. <br><br> CLARK COUNTY, a municipal corporation; GRANT HAGEN, an individual; AUSTIN CLOYD, an individual; JENNIFER BIVER, an individual; DEO SHARAN, an individual; EMRAH REBIHIC, an individual; ROBERT KARCHER, an individual; ALEXANDER CRUSE, an individual; CHRIS HOLMQUIST, an individual; DEBORA SCHMIERER, an individual. <br><br> Defendants. | No. <br><br> COMPLAINT <br><br> JURY TRIAL REQUESTED |

## I.     INTRODUCTION

1.1     Since the moment they admitted Jessie Booth into their Jail, Clark County Jail deputies were aware or suspected that he was under the influence of narcotics or suffering from the psychological symptoms of withdrawal, such as Delirium Tremens. Over the course of many hours, they observed his condition and mental health seriously deteriorate and they noted in their reports his increasingly erratic and strange behavior, which had put them on notice that Jessie Booth needed immediate medical and mental health treatment, and protection. Yet, Clark County Jail deputies ignored all of these signs, for hours. Instead of summoning medical providers, Clark

COMPLAINT - 1

1  County Jail deputies moved Mr. Booth from cell to cell as his behavior escalated.

1.2  Jail Deputy Hagen then watched Mr. Booth, in real time via video surveillance camera, repeatedly climb onto the sink in his cell and jump off while incoherently yelling. Deputy Hagen had the opportunity to intervene, but did nothing. Then, Mr. Booth attempted suicide by diving headfirst off the cell sink into the cement floor.

1.3  Mr. Booth tragically succumbed to his catastrophic injuries on January 20, 2022.

1.4  Clark County's policies, practices, and failure to train, supervise, and discipline its deputies led to Mr. Booth's untimely death.

1.5  Pursuant to these policies and practices, and by failing to take appropriate measures, Clark County and the individually named deputies are liable for Mr. Booth's injuries and death.

## II.    PARTIES

2.1  The Estate of Jessie Booth ("Plaintiff Estate") is a probate action arising from the death of Jessie Booth. Plaintiff Estate is admitted to administration by the Circuit Court of the State of Oregon for the County of Washington, case number 22PB03303. The Estate's claims are brought by its duly appoint Personal Representative, Stacy Bowen, a resident of Washington County in Oregon.

2.2  J.B. is Mr. Booth's minor biological child, a resident of Washington County in Oregon. His claims are brought by and through his next friend and guardian, Stacy Bowen, who is his biological grandmother (and Jessie Booth's mother). At the time of the events giving rise to this lawsuit, J.B. was 3 years old. Currently, J.B. is 5 years old.

2.3  Stacy Bowen is Jessie Booth's biological mother. She is a resident of Washington County in Oregon.

2.4  Defendant Clark County is a local government organized under Washington state law. Under its authority, the Clark County Sheriff's Department operates and manages the Clark County Jail, located at 707 West 13th Street Vancouver, WA 98660.

COMPLAINT - 2

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

2.5     Defendant Grant Hagen is employed by the Clark County Sheriff's Department. At the time of the incidents, Mr. Hagen was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.6     Defendant Austin Cloyd is employed by the Clark County Sheriff's Department. At the time of the incidents, Mr. Cloyd was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.7     Defendant Jennifer Biver is employed by the Clark County Sheriff's Department. At the time of the incidents, Ms. Biver was working within the scope of her official duties as Corrections Deputy and was acting under color of state law.

2.8     Defendant Deo Sharan is employed by the Clark County Sheriff's Department. At the time of the incident, Mr. Sharan was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.9     Defendant Emrah Rebihic is employed by the Clark County Sheriff's Department. At the time of the incident, Mr. Rebihic was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.10    Defendant Robert Karcher is employed by the Clark County Sheriff's Department. At the time of the incident, Mr. Karcher was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.11    Defendant Alexander Cruse is employed by the Clark County Sheriff's Department. At the time of the incident, Mr. Cruse was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.12    Defendant Chris Holmquist is employed by the Clark County Sheriff's Department. At the time of the incident, Mr. Holmquist was working within the scope of his official duties as Corrections Deputy and was acting under color of state law.

2.13    Defendant Debora Schmierer is employed by the Clark County Sheriff's Department. At the time of the incident, Ms. Schmierer was working within the scope of her official duties as Corrections Deputy and was acting under color of state law.

COMPLAINT - 3

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

### III. JURISDICTION AND VENUE

3.1 This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, as well as 42 U.S.C. § 1983.

3.2 Venue is appropriate in the Western District of Washington pursuant to 28 U.S.C. § 1391 because at least some of the Defendants reside in this judicial district and because the events and omissions giving rise to the claims alleged here occurred within the Western District of Washington.

3.3 On November 29, 2023, Plaintiff Estate and J.B. presented Defendant Clark County with a Claim for Damages sustained as a result of the incidents described in this Complaint, and apprising the County of the substance of the claims asserted herein, pursuant to RCW 4.96.020.

3.4 Clark County has not timely resolved the claims, and more than 60 days have elapsed since Plaintiffs presented their Claim for Damages on Defendant Clark County. Plaintiff Estate and J.B. have exhausted all administrative remedies. This action is timely filed within the statute of limitations of each cause of action pled herein.

### IV. FACTS

**December 2, 2021: Deputies Book Mr. Booth into Clark County Jail**

4.1 Clark County Jail deputies booked Jessie Booth (05/23/1992 – 01/20/2022) into jail on December 2, 2021.

4.2 Mr. Booth informed Jail deputies that he was detoxing from fentanyl.

**December 6, 2021: Mr. Booth's Behavior Deteriorated Significantly but Defendants did not have Him Evaluated by a Medical Provider**

4.3 On December 6, 2021, numerous deputies noticed a significant change in Mr. Booth's behavior. Instead of summoning appropriate medical care, deputies moved Mr. Booth from cell to cell.

<u>Cell B2 to Cell B7</u>

4.4 Initially, Clark County Jail staff housed Mr. Booth in cell B2.

4.5 Mr. Booth allegedly got into a physical altercation with another inmate, so deputies

COMPLAINT - 4

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

moved Mr. Booth to cell B7.  At the time, Defendant Cloyd and Defendant Biver noticed Mr. Booth's behavior worsen: Mr. Booth screamed and said things that did not make sense.

<u>Cell B7 to E Interview Room and F Interview Room</u>

4.6     Defendant Rebihic moved Mr. Booth from cell B7 to E Interview Room.  Mr. Booth stated things "that were not making sense" to Deputy Rebihic.  While in E interview room, Mr. Booth "acted very strange by smashing his tote breaking it into pieces, banging on the door and windows and shouting incoherent things as well as yelling at everyone that walks by."

4.7     Defendant Karcher noted in his report that Mr. Booth, "was acting off his baseline behavior" and appeared to pace quickly around the cell and spitting.

4.8     Deputies moved Mr. Booth to F interview room, where he continued to "scream[] and yell[] the entire time."

<u>F Interview Room to Cell B8</u>

4.9     Defendant Hagen and Defendant Rebihic moved Mr. Booth to another cell, B8. Defendant Rebihic noted in his report that Mr. Booth "seemed very distressed and sweaty . . . and [he] hasn't stopped yelling and banging on the door and windows."

4.10    Defendant Holmquist noted in his report that in his "professional opinion . . . [Mr. Booth] was under the influence of drugs" because Mr. Booth "was yelling profanities, making quick aggressive movements, and asking deputies 'Please just kill me.'"

<u>Mr. Booth Expresses Suicidal Ideation and Deputies Move Him to Cell A1-3</u>

4.11    Mr. Booth's erratic behavior continued.  Deputies observed Mr. Booth "on camera acting oddly in B8."

4.12    Defendant Karcher opined in his report that Mr. Booth's behavior "mirror[ed] the psychological symptoms of Delirium Tremens."

4.13    Shortly after moving him to cell B8, Deputies saw Mr. Booth lying on the floor with his jail-issued shirt wrapped around his head. Mr. Booth stated that he was suicidal. Deputies put Mr. Booth in a suicide smock and placed him on suicide prevention watch.

COMPLAINT - 5

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

4.14     Clark County Jail deputies had a duty to check on Mr. Booth every 15 minutes and then log their observations in the Electronic Pod Logbook. Clark County Jail staff should have engaged a mental health provider to evaluate Mr. Booth, determine the appropriate suicide intervention protocol, and establish a treatment plan. But they never took these actions.

4.15     Deputies moved Mr. Booth to cell A1-3 "due to the needs of the facility." Cell A1-3 had a bed and a tall metal sink. The floor was concrete with no padding.

4.16     Defendant Cloyd and other deputies in A-Pod heard Mr. Booth making loud noises in cell A1-3. Mr. Booth continued to say very strange things that didn't make sense, such as the deputies were "trying to hurt him," and Mr. Booth "didn't have enough time." The deputies did not seek mental health or medical treatment for Mr. Booth.

4.17     Deputies continued to observe Mr. Booth engage in odd behavior yet did nothing. Defendant Hagen observed Mr. Booth repeatedly climbing onto the sink and jumping off down to the concrete floor below while yelling incoherently, but Defendant Hagen chose not to call an emergency Code:

> **DETAILS:**
>
> On Tuesday, December 7th, 2021, I was working my assigned position as A Pod Deputy from the time slot of 0000-0300 Hours at the Clark County Jail. At approximately 0100, I heard a loud thud come from A-1 while I was sitting at the A-Pod desk. I immediately looked on the monitor and observed Inmate Booth, Jessie #242110 laying naked face down in A-1-3. Deputy Cloyd was already in A-Pod so I asked him to go into A-1 and check on cell #3 while I radio for more Deputies from Booking due to the fact Booth was currently a 2 on 1 Inmate. I had observed Booth earlier in my shift jump down from the sink while yelling incoherently. I did not call a Code at the time due to the fact I had been dealing with this Inmate the entire night and I witnessed his erratic behavior such as smashing his tote and yelling at Deputies for no apparent reason and he did not respond to any of my instructions leading up to this event. I felt it was necessary to do a welfare check rather than call a Code at the time. Numerous Deputies responded along with Sergeant Schmierer so I opened cell #3 so they could assess the situation. Code Blue was called over the radio after it was determined Booth had jumped off the sink and hit the floor of his cell head first. Nursing staff arrived to assist and AMR and Fire were called to transport Booth to the hospital.
>
> **CONCLUSION:**
>
> Booth was transported to the hospital.

4.18     Video surveillance depicts the following timeline:

    4.18.1  **0049 hours**: Mr. Booth climbs onto his sink and looks out the window to the day room. He then turns around and faces his cell. Mr. Booth is completely naked at this time.

COMPLAINT - 6

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

4.18.2 **0050 hours**: Mr. Booth steps off of the sink and onto his bed, losing his balance and almost falling. Mr. Booth gains his footing and then immediately climbs back onto the sink.

4.18.3 **0051 hours**: Mr. Booth climbs off the sink. Mr. Booth wraps his blanket around himself and then climbs back on top of the sink. Mr. Booth stands for a few minutes, apparently breathing heavily as his abdomen can be seen moving rapidly.

4.18.4 **0053 hours**: Mr. Booth throws his blanket onto the floor in front of his cell door. Within the next minute, a corrections deputy walks by the cell two times.

4.18.5 **0058 hours**: Mr. Booth bends at the waist while still standing on the sink and then stands back up just before 0059 hours. His abdomen is again moving rapidly as if he is breathing quickly.

4.18.6 **0100**: Mr. Booth bends at the waist, allowing his head to lead as he falls towards the ground. His arms are by his sides as he falls and he does not make any attempt to use his arms to stop himself or break his fall. His head strikes the concrete floor and his body follows with his arms extended away from his body.

4.19 Mr. Booth suffered serious traumatic injuries as a result of his fall from the sink hitting the cement floor.

4.20 After Mr. Booth's suicide attempt, deputies admitted that "[i]t was not immediately known by jail staff why he was found lying on the floor, so they entered his cell to check his welfare."

4.21 Deputies attempted to move Mr. Booth.  This was disastrous. Cervical spine injuries require immediate emergency medical attention to prevent further injury.  Attempting to move Mr. Booth to "help him up, grabbing him by both arms," exacerbated his life-threatening injuries.

COMPLAINT - 7

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

4.22 Defendant Cloyd and Deputy Garcia handcuffed Mr. Booth even though he was limp and unable to move from the ground.

4.23 Nurse Biven evaluated Mr. Booth and concluded that he "needed [to be] sent to the hospital via ambulance and asked that 911 be called for immediate transport." However, due to staffing issues, since RN Biven and LPN Hunter were the only medical staff on duty, they delayed calling for emergency services.

4.24 Additionally, Clark County Jail had only one qualified firearm deputy on shift. This further delayed Defendants' transport of Mr. Booth for emergency services.

4.25 Mr. Booth presented at PeaceHealth Medical Center with a broken skull, epidural hematoma, bleeding around the spinal cord, and C5-C7 spinal injury that rendered him quadriplegic.

4.26 Mr. Booth tragically succumbed to his injuries on January 20, 2022.

### Clark County's Unconstitutional Custom and Practice

4.27 Clark County has a policy, practice, and custom of failing to provide adequate medical care to jail inmates.

4.28 Clark County has a policy, practice, and custom of failing to conduct proper safety cell checks on jail inmates.

4.29 These policies and practices are part of the training and instruction that Clark County Jail imparts to its correctional deputies.

4.30 As a result of the policies, practices, and customs of Clark County, and the failure to properly train, supervise, and discipline Clark County correctional deputies, Mr. Booth died.

### V.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Denial of Adequate Medical Care (42 U.S.C. § 1983)

**Against Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer**

COMPLAINT - 8

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

5.1  Plaintiff Estate realleges and incorporates by reference each allegation as though set forth herein in full.

5.2  The facts set out above constitute the denial of adequate medical care under the Fourteenth Amendment.  Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer made an intentional decision to move Jessie Booth, a pretrial detainee, from cell to cell without summoning appropriate medical or mental health care, despite Jessie Booth's increasingly erratic and deteriorating behavior.  Defendants failed to appropriately monitor Jessie Booth and conduct safety cell checks.  Defendants put Jessie Booth at substantial risk of suffering serious harm and Defendants did not take reasonable available measures to abate the risk, even though a reasonable Correctional Deputy in those circumstances would have appreciated the high degree of risk involved—making the adverse consequences of the Defendants' conduct and failures to act obvious.

5.3  The conduct and failures of Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer caused Jessie Booth to be deprived of his civil rights protected by the Fourteenth Amendment of the United States Constitution, and that conduct legally, proximately, foreseeably, and actually caused Jessie Booth to suffer physical injuries, emotional distress, pre-death pain and suffering, loss of life, and further economic and general damages in an amount to be proven at the time of trial, for which Plaintiff Estate is entitled to pursue in this action.

5.4  The conduct and failures of Defendants alleged herein was malicious, oppressive, or in deliberate or reckless disregard of Jessie Booth's constitutionally protected rights, justifying an award of punitive damages against Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer in an amount to be proven at trial in order to deter Defendants and others from engaging in similar conduct and to make an example through monetary punishment, for which Plaintiff Estate is entitled to pursue in this action.

5.5  Plaintiff Estate is also entitled to recover its reasonable attorney fees and costs incurred in bringing this suit.

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

## SECOND CAUSE OF ACTION

**Violation of the Fourteenth Amendment Right of Association (42 U.S.C. § 1983)**

**Against Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer**

5.6   Plaintiffs J.B. and Stacy Bowen re-allege and incorporate by reference each allegation as though set forth herein in full.

5.7   Defendants deprived Jessie Booth of his civil rights that are protected under the Fourteenth Amendment of the United States Constitution, and that legally, proximately, foreseeably, and actually caused physical injuries, emotional distress, pre-death pain and suffering, and the loss of life of Jessie Booth.

5.8   Decedent's minor son, J.B., shared a close relationship and special bond with his father, Jessie Booth. J.B. and Jessie Booth cohabitated, and shared deep attachments, and commitments emblematic of a close familial relationship.  The deprivation of these rights has destroyed the Constitutional right of Decedent's minor son, J.B., to familial love, companionship, comfort, care, assistance, protection, affection, society, and moral support of his father, which is protected by the substantive due process clause of the Fourteenth Amendment.

5.9   Decedent's mother, Stacy Bowen, shared a close relationship and special bond with her son, Jessie Booth. Stacy Bowen shared deep attachments, and commitments emblematic of a close familial relationship.  The deprivation of these rights has destroyed the Constitutional right of Decedent's mother, Stacy Bowen, to familial love, companionship, comfort, care, assistance, protection, affection, society, and moral support of her son, which is protected by the substantive due process clause of the Fourteenth Amendment.

5.10   The conduct of Defendants alleged herein was malicious, oppressive, or in deliberate or reckless disregard of J.B. and Stacy Bowen's constitutionally protected rights, justifying an award of punitive damages against Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer in an amount to be proven at trial in order to deter

COMPLAINT - 10

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

Defendants and others from engaging in similar conduct and to make an example through monetary punishment.

5.11    Plaintiffs J.B. and Stacy Bowen are also entitled to his reasonable attorney fees and costs incurred in bringing this suit.

### THIRD CAUSE OF ACTION

### Negligence

### Against All Defendants

5.12    Plaintiff Estate realleges and incorporates by reference each allegation as though set forth herein in full.

5.13    Defendant Clark County, by and through the Clark County Jail and Defendants Hagen, Cloyd, Biver, Sharan, Rebihic, Karcher, Cruse, Holmquist, and Schmierer, had a duty to provide adequate medical care to Jessie Booth.  Defendant Clark County and its agents breached their duty and failed to exercise reasonable care by denying Jessie Booth adequate medical care.

5.14    Defendant County is liable for the acts and omissions of its employees, and is directly liable for its own negligent supervision, hiring, training, retention, and discipline of those employees, as described above.

5.15    As a direct and proximate result of the Defendants' actions and inactions, Plaintiff Estate suffered damages in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION

### Unconstitutional Policy, Practice, or Custom; Failure to Train, Supervise, or Discipline (*Monell v. Dept. of Social Services*)

### Against Clark County

5.16    All Plaintiffs re-allege and incorporate by reference each allegation as though set forth herein in full.

5.17    A moving force causing the violations of the Fourteenth Amendment Clause was the policies, practices, or customs of Clark County Jail regarding timely and adequate medical and mental health care, including but not limited to timely intake, consultation with healthcare

COMPLAINT - 11

MACDONALD HOAGUE & BAYLESS
705 Second Avenue, Suite 1500
Seattle, Washington 98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

providers, treatment, timely and proper safety cell checks of jail inmates, assignment to proper cells, and proper cell conditions, among others.

5.18 A moving force causing the violations of the Fourteenth Amendment Clause was Clark County's failed to maintain and provide adequate training, supervision, and discipline to its staff regarding providing timely and adequate medical and mental health care, including but not limited to timely intake, consultation with healthcare providers, treatment, timely and proper safety cell checks of jail inmates, assignment to proper cells, and proper cell conditions, among others.

5.19 The policymaking officials responsible for Clark County Jail were aware of and had notice of these deficiencies and with deliberate indifference failed to correct it.

5.20 The conduct and failures of Clark County caused Jessie Booth to be deprived of his civil rights protected by the Fourteenth Amendment of the United States Constitution, and that conduct legally, proximately, foreseeably, and actually caused Jessie Booth to suffer physical injuries, emotional distress, pre-death pain and suffering, loss of life, and further economic and general damages in an amount to be proven at the time of trial, for which all Plaintiffs are entitled to pursue in this action.

## VI.     REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request relief against Defendant as follows:

6.1 Trial to a jury;

6.2 A declaration that the individual Deputy Defendants' actions violated Jessie Booth's civil rights;

6.3 A declaration that the Defendant Clark County's policies, practices, customs, and usages caused the individual Deputy Defendants' violations of Jessie Booth's civil rights;

6.4 Damages for emotional distress, physical harm, and loss of association and other general and special damages;

6.5 Punitive damages against the individual Officer Defendants;

6.6 Pre-judgment and post-judgment interest on any amounts awarded;

COMPLAINT - 12

MacDonald Hoague & Bayless
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ra120101

6.7     Attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

6.8     Other declaratory, injunctive, and remedial relief and damages as the Court deems just and equitable; and

6.9     The right to conform the pleadings to the evidence presented.

DATED this 14th day of February, 2024.

Respectfully submitted,

**MacDONALD HOAGUE & BAYLESS**

By:   */s/   Lauren I. Freidenberg*
Lauren I. Freidenberg, WSBA #59145
705 Second Avenue, Suite 1500
Seattle, WA  98104
206-622-1604
LaurenF@mhb.com

***Attorney for Plaintiffs***

**MacDONALD HOAGUE & BAYLESS**

By:   */s/   Jesse Wing*
Jesse Wing, WSBA #27751
705 Second Avenue, Suite 1500
Seattle, WA  98104
206-622-1604
JesseW@mhb.com

***Attorney for Plaintiffs***

COMPLAINT - 13

**MacDonald Hoague & Bayless**
705 Second Avenue, Suite 1500
Seattle, Washington  98104
Tel 206.622.1604  Fax 206.343.3961

ra120101